## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-19-49-G** |
| | ) | |
| **NATALIE DAWN HALBERT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Now before the Court are the Government's Amended Motion for Restitution (Doc. No. 106) and Supplement thereto (Doc. No. 109). Defendant Natalie Dawn Halbert has filed a Response (Doc. No. 108). In addition, a hearing was held on the Motion at which the Government heard argument from counsel and testimony from the Government's retained expert, Edith Wong, CPA, and considered exhibits submitted by Defendant. *See* Doc. No. 114.

### I.    *Background*

On February 19, 2019, Defendant was charged via indictment with two counts of child sex trafficking in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), 1594(a), and 2. On September 5, 2019, Defendant pleaded guilty, and on May 10, 2021, the Court entered judgment. *See* J. (Doc. No. 87). Defendant was sentenced to 216 months' imprisonment on each count, to run concurrently, with the determination of restitution to be deferred. *See id.* at 2-3, 7; 18 U.S.C. § 3664(d)(5).

On August 28, 2020, the Government filed its Initial Motion for restitution (Doc. No. 76). In May 2021, the Government then requested that the Court stay or abate the restitution proceedings pending a decision by the Tenth Circuit Court of Appeals in *United States v. Anthony*, No. 21-6015 ("*Anthony II*"). The Court granted that unopposed motion and stayed proceedings as to the Government's restitution request. *See* Order of June 9, 2021 (Doc. No. 90).

Following the Tenth Circuit's issuance of a decision in *Anthony II*, the Court permitted the Government to file its Amended Motion for Restitution (Doc. No. 106) and conducted the hearing thereon.

## II.    *Relevant Standards*

The Government seeks restitution on behalf of child victims D.H. and S.H. pursuant to 18 U.S.C. § 1593 (the Trafficking Victims Protection Reauthorization Act or "TVPRA"). The TVPRA provides for mandatory payment from the defendant to the victim in "the full amount of the victim's losses," as that term is defined in 18 U.S.C. § 2259(c)(2). 18 U.S.C. § 1593(b)(1), (3); *accord* U.S.S.G. § 5E1.1(a)(1).

As relevant here, the "full amount of the victim's losses" includes both the "value to the defendant of the victim's services or labor" and

> any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, . . . including—
>
>> (A) medical services relating to physical, psychiatric, or psychological care;
>>
>> (B) physical and occupational therapy or rehabilitation;
>>
>> (C) necessary transportation, temporary housing, and child care expenses;

      (D) lost income;

      (E) reasonable attorneys' fees, as well as other costs incurred; and

      (F) any other relevant losses incurred by the victim.

18 U.S.C. §§ 1593(b)(3), 2259(c)(2).

      Pursuant to 18 U.S.C. § 3664, the Government bears the burden to demonstrate the amount and type of loss sustained by the victim as a result of the offense "by the preponderance of the evidence" and sets forth various procedural requirements. *Id.* § 3664(e); *see id.* § 3664(a), (f)-(k); *United States v. Anthony* ("*Anthony I*"), 942 F.3d 955, 964 (10th Cir. 2019). "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court" and "without consideration of the economic circumstances of the defendant" or "the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source." 18 U.S.C. § 3664(f)(1)(A), (B).

      The Government must prove both proximate causation (cause with a sufficient connection to the result) and but-for causation ("causation in fact" or "actual causation") in a sex-trafficking case such as this one. *See* Gov't Am. Mot. at 21; *Anthony I*, 942 F.3d at 965-66 (holding that 18 U.S.C. § 1593 "limit[ed] restitution to losses that the defendant's conduct has directly and proximately caused"); *see also Anthony II*, 22 F.4th 943, 948 (10th Cir. 2022) ("[A] defendant's conduct must be a but-for cause of the victim's losses for a court to order restitution."); *Paroline v. United States*, 572 U.S. 434, 445-48, 449-50, 458 (2014) (holding that restitution was proper under § 2259 even absent a showing of but-for causation in the "special context" of a pornography-possession offense but noting that but-

for causation is easily shown in offenses such as producing or distributing child pornography and selling children).

"The court need not calculate the harms with exact precision, but it must set a restitution amount that is rooted in a calculation of actual loss." *Anthony I*, 942 F.3d at 970 (emphasis and internal quotation marks omitted). "[T]he determination of an appropriate restitution amount is by nature an inexact science," however. *United States v. Blackburn*, No. CR-14-0129, 2017 WL 3225482, at *2 (D.N.M. July 28, 2017). "In determining the amount of loss, a sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss." *United States v. Howard*, 887 F.3d 1072, 1076 (10th Cir. 2018) (emphasis and internal quotation marks omitted) (discussing restitution under 18 U.S.C. § 3663A).

   III.   *Discussion*

      A. *Background*

In this case, Defendant was convicted of providing and maintaining her daughters, D.H. and S.H., knowing as to each victim that the victim had not attained the age of 18 years and would be caused to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a). Specifically, Defendant prostituted her minor daughters to adult men for money and then collected and kept those payments for herself. *See* Final Presentence Report (Doc. No. 74).

Along with Defendant, three other individuals were convicted of sex trafficking of D.H. and S.H. in related cases in this Court: *United States v. Wilson Leonel Gramajo-*

*Maldonado*, No. CR-19-149-G (W.D. Okla.); *United States v. Rolando Cifuentes-Lopez*, No. CR-19-364-G (W.D. Okla.); and *United States v. Eri Cifuentes-Lopez*, No. CR-19-365-G (W.D. Okla.).

### B.  The Expert Witness Reports

In support of its request, the Government presents: (i) psychological evaluations of D.H. and S.H., accompanied by an estimate as to each victim's treatment costs and losses, authored by C. David Missar, PhD; and (ii) the written reports and hearing testimony of Ms. Wong.  *See* Missar Reports (Doc. Nos. 107-1, 107-2); Wong Reports (Doc. Nos. 107-3, 107-4).

### 1.  Victim D.H.

After considering D.H.'s background, in-person evaluation, and testing, as well as the case record and other sources, Dr. Missar diagnosed D.H. with post-traumatic stress disorder, dysthymic disorder, past sexual abuse, and several learning disorders, as well as observation of other suspected mental condition.  *See* Missar D.H. Report (Doc. No. 107-1).  Dr. Missar concluded that D.H. would be faced with the following costs and losses:

| | |
|---|---|
| Intensive individual therapy<br>(2 years x 50 wk/yr x 2 times/wk x $150/hr) | = $ 30,000.00 |
| Ongoing individual therapy (61 years x 50 wk/yr x $150/hr) | = $ 457,500.00 |
| Group therapy (10 years x 50 wk/yr $100/hr) | = $ 50,000.00 |
| Psychiatrist (2 years x 12 visits/yr x $200/hr) | = $ 4800.00 |
| Psychiatrist (59 years x 2 visits/yr x $200/hr) | = $ 23,600.00 |
| Medications (61 years x $4000/yr) | = $ 244,000.00 |
| Tutoring (4 years x 50 wk/yr x 2x/week x $25/hr) | = $ 10,000.00 |
| Lost work wages | = $ 600,000.00 |
| Total | $ 1,419,900.00 |

*See* Missar Report at 16-18.[1]

Ms. Wong relied upon the psychological report and treatment requirements set forth by Dr. Missar but differed significantly in calculating the proper dollar amount of D.H.'s losses for purposes of restitution. Taking into account inflation, mortality probability, and a discount for net present value, and apportioning certain estimates to preclude restitution payment based upon trauma that occurred prior to the trafficking of D.H. charged in this case, Ms. Wong recommended a lower restitution award:

---

[1] Dr. Missar erroneously calculated the "ongoing individual therapy" sum as $475,500.00. The Court has substituted the correct amount of $457,500.00 and adjusted the total accordingly.

|  | A<br>Treatment | B<br>Ill-Gotten Gains | C<br>Educational Expenses | D<br>Lost Earnings | Total |
|---|---|---|---|---|---|
| Calculated Restitution | $750,119 | $590 | $9998 | $853,276 | $1,613,983 |
| Percent Attributable to Pre-Trafficking Trauma | 23% | 0% | 23% | 23% |  |
| **Restitution Attributable to Pre-Trafficking Trauma** | **$170,786** | **$-** | **$2276** | **$194,273** | **$367,335** |
| Percent Attributable to Trafficking | 77% | 100% | 77% | 77% |  |
| **Restitution Attributable to Trafficking** | **$579,333** | **$590** | **$7721** | **$659,004** | **$1,246,648** |

*See* Wong D.H. Report (Doc. No. 107-3) at 3-11.

Ms. Wong also allocated the restitution attributable to lost earnings, treatment costs, and educational expenses among the four defendants, based upon each defendant's sentence length (calculated as a percentage of a sum of the sentence lengths for all defendants):

| | | A | B | C | D | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Treatment | Ill-Gotten Gains | Educational Expenses | Lost Earnings | Total |
| **Defendant** | **Calculated Allocation %** | | | | | |
| Rolando Cifuentes-Lopez | 26% | $150,503 | $- | $2006 | $171,200 | $323,709 |
| Eri Cifuentes-Lopez | 26% | $150,503 | $- | $2006 | $171,200 | $323,709 |
| **Natalie Halbert** | **19%** | **$111,331** | **$590** | **$1484** | **$126,641** | **$240,046** |
| Wilson Gramajo-Maldonado | 29% | $166,996 | $- | $2226 | $189,962 | $359,184 |
| **Total:** | **100%** | **$579,333** | **$590** | **$7721** | **$659,004** | **$1,246,648** |

See id. at 3, 6, 18.[2]

### 2. Victim S.H.

Dr. Missar also evaluated and tested S.H. in person, diagnosing her with post-traumatic stress disorder, dysthymic disorder, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), past sexual abuse, and several learning disorders, as well as observation of other unspecific mental condition.  See Missar S.H. Report (Doc.

---

[2] As to both victims, Ms. Wong attributed all of the ill-gotten gains to Defendant Halbert, as she was the only one identified as having withheld money earned by D.H. and S.H.  See Wong D.H. Report at 3 n.4; Wong S.H. Report (Doc. No. 107-4) at 3 n.4.

No. 107-2) at 1-16.  Dr. Missar concluded that S.H. would be faced with the following costs and losses:

| | |
|---|---|
| Intensive individual therapy<br>(2 years x 50 wk/yr x 2 times/wk x $150/hr) | = $ 30,000.00 |
| Ongoing individual therapy (62 years x 50 wk/yr x $150/hr) | = $ 465,000.00 |
| Group therapy (10 years x 50 wk/yr x $100/hr) | = $ 50,000.00 |
| Psychiatrist (2 years x 12 visits/yr x $200/hr) | = $ 4800.00 |
| Psychiatrist (60 years x 2 visits/yr x $200/hr) | = $ 24,000.00 |
| Medications—Mood (62 years x $4000/yr) | = $ 248,000.00 |
| Medications—ADHD (62 years x $2400/yr) | = $ 148,800.00 |
| Tutoring (6 years x 50 wk/yr x 2x/week x $25/hr) | = $ 15,000.00 |
| Lost work wages | = $ 600,000.00 |
| Total | $ 1,584,800.00 |

*See* Missar Report at 16-18.[3]

Ms. Wong again relied upon the psychological report and treatment requirements but not the loss calculations set forth by Dr. Missar.  Taking into account inflation, mortality probability, and a discount for net present value, and apportioning her estimates to preclude restitution payment based upon trauma that occurred prior to the relevant trafficking of S.H., Ms. Wong recommended:

---

[3] Dr. Missar erroneously calculated the tutoring total as $10,000, rather than $15,000.  The Court has substituted the correct amount and adjusted the total accordingly.

|  | A | B | C | D |  |
|---|---|---|---|---|---|
|  | **Treatment** | **Ill-Gotten Gains** | **Educational Expenses** | **Lost Earnings** | **Total** |
| Calculated Restitution | $901,285 | $60 | $14,979 | $834,407 | $1,750,732 |
| Percent Attributable to Pre-Trafficking Trauma | 39% | 0% | 39% | 39% |  |
| **Restitution Attributable to Pre-Trafficking Trauma** | **$352,957** | **$-** | **$5866** | **$326,766** | **$685,589** |
| Percent Attributable to Trafficking | 61% | 100% | 61% | 61% |  |
| **Restitution Attributable to Trafficking** | **$548,329** | **$60** | **$9113** | **$507,641** | **$1,065,143** |

*See* Wong S.H. Report at 3-12.

Ms. Wong then allocated the restitution attributable to lost earnings, treatment costs, and educational expenses among the four defendants, using each defendant's sentence length:

| | | A | B | C | D | |
| | | Treatment | Ill-Gotten Gains | Educational Expenses | Lost Earnings | Total |
|---|---|---|---|---|---|---|
| **Defendant** | **Calculated Allocation %** | | | | | |
| Rolando Cifuentes-Lopez | 26% | $142,448 | $- | $2367 | $131,878 | $276,694 |
| Eri Cifuentes-Lopez | 26% | $142,448 | $- | $2367 | $131,878 | $276,694 |
| **Natalie Halbert** | **19%** | **$105,373** | **$60** | **$1751** | **$97,554** | **$204,738** |
| Wilson Gramajo-Maldonado | 29% | $158,059 | $- | $2627 | $146,331 | $307,017 |
| **Total:** | **100%** | **$548,329** | **$60** | **$9113** | **$507,641** | **$1,065,143** |

*See id.* at 3, 6-7, 19.

### 3. Summary

The Government suggests that, because Dr. Missar's Reports present estimates for costs and losses associated with all the four defendants and opine that each of those defendants caused trauma, the harms in those Reports are sufficiently differentiated and an award pursuant to Dr. Missar's Reports would be proper. *See* Gov't's Am. Mot. Restitution at 23-24. Noting the similarities between these Reports and the opinion (also authored by Dr. Missar) rejected by the Tenth Circuit in *Anthony II*, however, the Government also presents Ms. Wong's Reports and calculations as support for a restitution award. *See id.* at 24.

The Court finds that, to the extent Dr. Missar's and Ms. Wong's reports differ and as further explained herein, Ms. Wong's award recommendation—which further disaggregates the victims' relevant trauma from other circumstances—is more aligned with the Tenth Circuit's guidance in *Anthony I* and *Anthony II*. In addition, her Reports and hearing testimony are detailed and credible. The Court therefore considers Ms. Wong's Reports, with recommended awards from Defendant of $240,046 for D.H. and $204,738 for S.H., as the governing basis for the Government's request.

### C. The Award of Restitution

#### 1. D.H.'s and S.H.'s Entitlement to Restitution

Upon consideration of the parties' briefing, as well as the remainder of the case record, the Court finds that D.H. and S.H. are "victims" harmed by Defendant's violations of §§ 1591 and 1594 and are entitled to restitution under § 1593. *See* 18 U.S.C. § 1593(c); *see also* Plea Pet. ¶ 20 (Doc. No. 54) (Defendant affirming her understanding that she may be required to pay restitution to any victim of the offense).

#### 2. Ill-Gotten Gains

Based upon the case record, Ms. Wong estimated that Defendant withheld $590 and $60 in proceeds generated by D.H's and S.H.'s sex-trafficking victimization, respectively. *See* Wong D.H. Report at 3, 8; Wong S.H. Report at 3, 8-9. Although the Court has declined to include such ill-gotten gains when awarding restitution pursuant to 18 U.S.C. § 2259, *see United States v. Bell*, No. CR-19-15-G (W.D. Okla. Aug. 2, 2024) (order), in contrast to that statute § 1593 prescribes:

> As used in this subsection, the term "full amount of the victim's losses" has the same meaning as provided in section 2259(c)(2) and *shall in addition include the greater of the gross income or value to the defendant of the victim's services or labor* or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.).

18 U.S.C. § 1593(b)(3).

Accordingly, the Court will include these withheld proceeds in Defendant's award.

*See, e.g.*, *United States v. Rivera*, No. 22-2780-CR, 2024 WL 2813548, at *4-5 (2d Cir. June 3, 2024); *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1164 (9th Cir. 2010).

### 3. Joint and Several Liability

In determining the restitution award, "[i]If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution." 18 U.S.C. § 3664(h). The Government argues that the four defendants should be held jointly and severally liable as to the total restitution award, as they all participated in a "common scheme" in trafficking D.H. and S.H. Gov't's Am. Mot. at 16-19.

The case records for the four defendants do not reflect that they were working together so much as they were each acting in their own self-interest, in ways that inflicted similar harms upon the victims. For example, the Government maintains that Defendant and Mr. Rolando Cifuentes-Lopez "orchestrated and executed the commercial sex business" and "provided the child victims to men." *Id.* at 18. The Court found, however, that Mr. Cifuentes-Lopez had not been shown to organize the sex trafficking or to help plan the commercial sex operation being run by Defendant. *See Rolando Cifuentes-Lopez*, No.

CR-19-364-G (W.D. Okla. Apr. 19, 2021) (order). The Court also found that it had not been shown that Mr. Cifuentes-Lopez sent men to the victims' residence for the purpose of having sex with the victims. *See id.* The Court declines to exercise its discretion to hold the four defendants jointly and severally liable.

### 4. *Reasonableness of Projected Losses*

In his Reports, Dr. Missar presented findings as to the frequency, duration, and cost of treatment and services that will be required by the victims due to the trauma inflicted by the four defendants. *See* Missar D.H. Report at 14-18 (addressing need for individual and group therapy, psychiatric and psychological care, and medications); Missar S.H. Report at 13-18 (same). Ms. Wong accepted these findings as to the victims' necessary medical care and, after accounting for inflation and mortality probability, discounting for net present value, and apportioning only 77% or 61% of the total costs to the four defendants due to each victim's pre-trafficking trauma, quantified this loss at $1,246,648 (D.H.) and $1,065,143 (S.H.).

Defendant objects that Dr. Missar's findings as to treatment are speculative and unreasonable "worst-case scenarios," as they do not account for the possibility of either victim's individualized progress. *See* Def.'s Resp. at 7. The Court considers this criticism unfounded. Dr. Missar's evaluation of D.H. and S.H. was based upon both an in-person interview and formal testing, and there is no indication in the record that Dr. Missar lacks the requisite qualifications or is otherwise unable to offer informed opinions regarding the necessary mental health treatment or trauma effects for an underage victim of sex trafficking. *See* Missar CV (Doc. No. 106-1). Restitution for the victim's anticipated

future costs, including the cost of future therapy, is appropriately included in the "full amount of the victim's losses" under § 1593 as long as the costs are "reasonably projected to be incurred in the future." 18 U.S.C. § 1593(b)(3); *id.* § 2259(c)(2); *see also United States v. Julian*, 242 F.3d 1245, 1247-48 (10th Cir. 2001). Accordingly, the Court accepts the Government's experts' determination as to the victims' treatment needs and loss of earnings.

Defendant similarly argues that an award of the recommended amounts for ongoing future therapy and treatment is unreasonable because there has been no showing that either victim has actually incurred therapy, medication, or tutoring costs since the time of Defendant's conviction. *See* Def.'s Resp. at 5-6. But the Court "compensate[s] a victim with restitution, that is, money—whether she chooses to use the money in a particular way is up to her." *In re Sealed Case*, 702 F.3d 59, 67 (D.D.C. 2012); *cf.* 18 U.S.C. § 3664(g)(2) ("A victim may at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments."). Defendant has not shown a lack of reasonableness on this basis.

### 5. *Causation*

Defendant also objects that the Government has failed to sufficiently establish causation as to her, given that both victims suffered sexual abuse and trauma at the hands of individuals other than Defendant. *See* Def.'s Resp. at 7-10; *Paroline*, 572 U.S. at 448 ("[P]roximate cause forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity.");

*Anthony II*, 22 F.4th at 950 ("To prove direct causation, [the Government] must show that, but for the defendant's conduct, the victim would not have suffered those losses.").

Section 2259, incorporated into § 1593(b)(3), "authorizes the 'full amount' of [the victim's] losses, leaves to the district court the authority to determine those losses, and includes—but is not limited to—the types of losses listed" therein. *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

> [T]his type of case—involving the sex trafficking of minors—will not necessarily involve individuals possessing a blank slate, unaffected by any sort of trauma before being trafficked. The Court thinks it unlikely that the Tenth Circuit, in requiring the government to establish but-for and proximate causation, intended to disqualify every trafficking victim who, at some point in their life, suffered from trauma unrelated to the offense conduct.

*United States v. Coulter*, No. CR-18-156-D, 2024 WL 388132, at *3 (W.D. Okla. Feb. 1, 2024), *appeal docketed*, No. 24-6026 (10th Cir. Feb. 14, 2024). "And while the statute informs the court's analysis as to a proper amount of restitution, it sets no numeric limits on the amount of restitution that can be ordered." *Dillard*, 891 F.3d at 158.

In reaching her recommendation, Ms. Wong endeavored to disaggregate the harms and losses that predated D.H.'s and S.H.'s trafficking and to thereby "isolate the harm" from the offenses committed by the four defendants as to each victim. *Anthony I*, 942 F.3d at 969; *see* Wong D.H. Report at 3, 4-6, 16 (apportioning 23% of treatment, educational expenses, and lost earnings to D.H.'s pre-trafficking trauma); Wong S.H. Report at 3, 4-6, 17 (apportioning 39% of treatment, educational expenses, and lost earnings to S.H.'s pre-trafficking trauma). Ms. Wong acknowledges that she was required to employ certain

assumptions and estimates in reaching her calculations, but the Supreme Court has suggested that such an approach is a feature, not a bug:

> [A] court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. But that is neither unusual nor novel, either in the wider context of criminal sentencing or in the more specific domain of restitution.

*Paroline*, 572 U.S. at 459; *see Anthony I*, 942 F.3d at 969-70 (recognizing the "difficulty in setting a restitution amount . . . where the victim's asserted losses overlap with similar harms that occurred before the events at issue" and noting that the district court "need not calculate the harms with exact precision" (internal quotation marks omitted)). Having considered Ms. Wong's methodology and opinions, along with the remainder of the case record, the Court finds that the Government has shown by a preponderance of the evidence that the disaggregated amounts set forth in her Reports are properly recoverable under § 1593.

### 6. Apportionment of Liability

The Court grants Defendant's request for liability on the award to be apportioned to take into account Defendant's "level of contribution to the victim[s'] loss" and "economic circumstances." 18 U.S.C. § 3664(h). The Court does not rely on Ms. Wong's approach to apportionment, however.

Ms. Wong recommended apportionment of 19% of the liability to Defendant as to each victim, using a comparison of the sentence length for the four implicated Defendants as a way to measure relative culpability. *See, e.g.* Wong D.H. Report at 6 (explaining that

using each sentence length as a percentage considers the "relative severity" of each defendant's actions).   Defendant criticizes this approach and argues that Ms. Wong's recommendation as to her required portion is too high.  *See* Def.'s Resp. at 3-5, 8, 10 (citing Defendant's lack of sexual or violent behavior toward the victims, lower prison sentence, financial hardships, and mental deficiencies).   Because sentencing decisions reflect more than relative culpability for the particular offense, *see* 18 U.S.C. § 3553 (directing that sentence be based on both "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as other factors), the Court agrees that a comparison of length of sentence, alone, is not an effective way of assessing each implicated defendant's contribution to a victim's loss.   Nor does that approach meaningfully consider each implicated defendant's economic circumstances.

### a.  Victim D.H.

The disaggregated amounts found by Ms. Wong, and adopted by the Court, reflect a total loss for D.H. of $1,246,648.  After carefully considering this total loss, the conduct of each of the four implicated defendants with respect to D.H., and each defendant's economic circumstances, the Court finds that the proper apportionment of responsibility for D.H.'s loss is: 35% for Rolando Cifuentes-Lopez, 35% for Eri Cifuentes-Lopez, 20% for Defendant, and 10% for Wilson Gramajo-Maldonado.  This results in the following assignment of loss amounts:

|  |  | A | B | C | D |  |
|---|---|---|---|---|---|---|
|  |  | Treatment | Ill-Gotten Gains | Educational Expenses | Lost Earnings | Total |
| **Defendant** | **%** |  |  |  |  |  |
| Rolando Cifuentes-Lopez | 35% | $202,766.55 | $0 | $2702.35 | $230,651.40 | $436,120.30 |
| Eri Cifuentes-Lopez | 35% | $202,766.55 | $0 | $2702.35 | $230,651.40 | $436,120.30 |
| **Natalie Halbert** | **20%** | **$115,866.60** | **$590** | **$1544.20** | **$131,800.80** | **$249,801.60** |
| Wilson Gramajo-Maldonado | 10% | $57,933.30 | $0 | $772.10 | $65,900.40 | $124,605.80 |
| Total: | 100% | $579,333 | $590 | $7721 | $659,004 | $1,246,648 |

The Court finds that the conduct of Defendant both directly and proximately caused the loss amounts assigned to her with respect to D.H. and that but for Defendant's actions D.H. would not have suffered those specific losses.

b. <i>Victim S.H.</i>

The disaggregated amounts found by Ms. Wong, and adopted by the Court, reflect a total loss for S.H. of $1,065,143. After carefully considering this total loss, the conduct of each of the four implicated defendants with respect to S.H., and each defendant's economic circumstances, the Court finds that the proper apportionment of responsibility for S.H.'s loss is: 20% for Rolando Cifuentes-Lopez, 20% for Eri Cifuentes-Lopez, 25%

for Defendant, and 35% for Wilson Gramajo-Maldonado.  This results in the following assignment of loss amounts:

|  |  | A | B | C | D |  |
|---|---|---|---|---|---|---|
|  |  | Treatment | Ill-Gotten Gains | Educational Expenses | Lost Earnings | Total |
| **Defendant** | **%** |  |  |  |  |  |
| Rolando Cifuentes-Lopez | 20% | $109,665.80 | $0 | $1822.60 | $101,528.20 | $213,016.60 |
| Eri Cifuentes-Lopez | 20% | $109,665.80 | $0 | $1822.60 | $101,528.20 | $213,016.60 |
| **Natalie Halbert** | **25%** | **$137,082.25** | **$60** | **$2278.25** | **$126,910.25** | **$266,330.75** |
| Wilson Gramajo-Maldonado | 35% | $191,915.15 | $0 | $3189.55 | $177,674.35 | $372,779.05 |
| Total: | 100% | $548,329 | $60 | $9113 | $507,641 | $1,065,143 |

The Court finds that the conduct of Defendant both directly and proximately caused the loss amounts assigned to her with respect to S.H. and that but for Defendant's actions S.H. would not have suffered those specific losses.

CONCLUSION

For the reasons herein, the Government's Amended Motion for Restitution (Doc. Nos. 106, 109) is GRANTED.  An amended judgment shall be entered to reflect a restitution award of $249,801.60 as to D.H. and $266,330.75 as to S.H.

IT IS ORDERED that, because the amended judgment will provide for nominal periodic payments to be made, Defendant's Motion (Doc. No. 124) seeking the entry of such payment terms is DENIED AS MOOT.

IT IS FURTHER ORDERED that the Government's unopposed Motion to Amend (Doc. No. 101) is GRANTED, pursuant to Federal Rules of Criminal Procedure 32.2(b)(4)(B) and 36.  The Court's amended judgment shall reference the cited order of preliminary forfeiture.

IT IS SO ORDERED this 19th day of August, 2024.

CHARLES B. GOODWIN
United States District Judge